# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLOBAL SOURCING LLC,<br>           Plaintiff,<br><br>v.<br><br>DBDK INTERNATIONAL, LLC, DANIEL KOREN, BENJAMIN KOREN AND DANIEL ROUBENI,<br>           Defendant. | CIVIL ACTION<br><br><br><br>NO. 17-325 |

## MEMORANDUM OPINION

In December 2010, Plaintiff, Global Sourcing ("Global"), and Defendant Daniel Koren teamed up to produce luxury costume jewelry. Koren designed the jewelry and Dana Hollingsworth, the owner of Global, manufactured it. In January 2014, Koren, his brother Benjamin, and Daniel Roubeni, (together "Individual Defendants") formed DBDK which continued the design/manufacturing relationship with Global.

From January 2014 through December 2016 DBDK issued purchase orders to Global and Global filled those orders and invoiced DBDK. Although the parties also entered into negotiations for a master contract to govern their relationship, they did not sign a written agreement. Nevertheless, Plaintiff asserts that DBDK's CEO orally agreed to abide by the following installment payment terms: 10% upon delivery, 45% within 30 days thereafter, and 45% within 60 days after delivery. Defendants dispute that there was such an oral agreement.

Global brought suit after DBDK did not pay up on two of its purchase orders – a March 29, 2016 order for $276,611 of product and a May 2, 2016 order for $75,970.12 of product. Defendants have moved for partial summary judgment on the following claims – fraudulent inducement, negligent misrepresentation, unjust enrichment, quantum meruit as well as the

breach of contract claim brought against Defendant Roubeni in his personal capacity. For the reasons set forth below, their Motion is granted in part and denied in part.

## I. Legal Standard

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). The Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp.* at 322-26); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe*, 480 F.3d at 256 (citing *Celotex*, 477 U.S. at 322-26). In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

## II. Discussion

*A. The gist of the action doctrine bars Plaintiff's fraudulent inducement and negligent misrepresentation claims*

Defendants move for summary judgment on Plaintiff's fraudulent inducement and negligent misrepresentation claims on the basis of the gist of the action doctrine.[1]  In general, the gist of the action doctrine "forecloses a party's pursuit of a tort action for the mere breach of contractual duties without any separate or independent event giving rise to the tort." *Sköld v. Galderma Labs., L.P.*, 99 F.Supp.3d 585, 600 (E.D. Pa. 2015) (citations and internal quotation marks omitted).  A claim is barred by the gist of the action doctrine "[i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract." *Bruno v. Erie Ins. Co.* 106 A.3d 48, 60 (Pa. 2014).  This bar includes claims for fraudulent inducement and negligent misrepresentation which are based solely on a breach of contract.  *See Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004).

The contracts alleged here are the purchase orders and the installment term oral agreement.  In Pennsylvania, the use of purchase orders and invoices constitutes a valid contractual arrangement.  *See* 13 Pa. Stat. and Cons. Stat. Ann. § 2204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.").  While there is no written contract between the parties regarding installment payment terms – that fact alone does not preclude application of the gist of the action doctrine in that it is well settled in Pennsylvania "that the mere absence of a particular document specifying the precise terms of sale does not deprive the

---

1. Both parties have cited only to Pennsylvania law in arguing their respective positions on these claims.  Thus, any contention that a different state's law applies has been waived.  *See Neely v. Club Med Mgmt. Servs., Inc.,* 63 F.3d 166, 180 (3d Cir. 1995) (en banc) ("[C]hoice of law issues may be waived."); *MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 737 n.5 (E.D. Pa. 2013) (holding that party waived choice of law argument by citing only one state's laws).

parties of a contractual relationship." *The Knit With v. Knitting Fever, Inc.*, 2009 WL 3427054, at *13 (E.D. Pa. 2009), *aff'd*, 625 F. App'x 27 (3d Cir. 2015). Pennsylvania's version of the Uniform Commercial Code explains that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognized the existence of such contract." 13 Pa. Cons. Stat. Ann. § 2204(a); *see also Perkasie Indus. Corp. v. Advance Transformer, Inc.,* 1993 WL 183982, at *1 (E.D. Pa. 1993), *aff'd*, 19 F.3d 644 (3d Cir. 1994) ("When [Defendants] filled [Plaintiff's] ballast orders, and forwarded the corresponding invoices, a commercial sales contract was formed between the parties."). Here, there is sufficient evidence in the record when viewed in the light most favorable to the Plaintiff that the parties had formed an oral contract with respect to the payment terms during their efforts to negotiate a written master contract to govern the business relationship.

    *i.*    *Fraudulent Inducement*

Plaintiff's fraudulent inducement claim is premised on its contention that Defendants misrepresented their intention and ability to pay for the March and May 2016 purchase orders in order to induce Plaintiff to accept the purchase orders. Although courts are far from unified on whether the gist of the action doctrine bars claims predicated on a party's intent not to perform,[2] absent specific guidance from the Third Circuit or the Pennsylvania Supreme Court, this Court continues to "opt for the interpretation [of Pennsylvania law] that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." *Wen. v. Willis*, 117 F. Supp. 3d 673, 682 (E.D. Pa. 2015) (Beetlestone, J.) (quoting *Vives*, 849 F. Supp. 2d at 522). Accordingly, it concludes that representations concerning the Defendants' intent to perform,

---

[2] *See, e.g., Vives v. Rodriguez*, 849 F. Supp. 2d 507, 518 (E.D. Pa. 2011) (collecting cases and holding that claims of fraudulent inducement are barred by gist of the action doctrine where "the false representation concerned duties later enshrined in the contract – which would necessarily include representations as to the defendant's intent to perform."); *Brickman Grp., Ltd. v. CGU Ins. Co.*, 865 A.2d 918 (Pa. Super. 2004*)*; *Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016) (recognizing split, but refusing to resolve the issue).

including their intent to pay in the future, are subsumed by a claim for breach of contract and that any claim premised on that contention is barred by the gist of the doctrine.[3]

    *ii.*    *Negligent Misrepresentation*

Plaintiff's claim for negligent representation is also barred by the gist of the action doctrine because, like the fraudulent inducement claim, it concerns Defendant's representations concerning its ability to pay for the goods it ordered. Specifically, at a meeting among the parties, Defendants told Hollingsworth that DBDK estimated it had $2 million in customer orders, when it did not have any confirmed orders. In a case on all fours with the present dispute – a plaintiff alleging that a defendant continued to purchase goods and services while assuring the seller of its ability to pay – the Third Circuit held that the negligent misrepresentation claim concerning Defendants' ability to pay was barred because it arises "solely from the alleged underlying breach of contract." *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 911 (3d Cir. 2015); *see also Tier 1 Innovation, LLC v. Expert Tech. Group, LP*, 2007 WL 1377664 (E.D. Pa. 2007) (dismissing both fraud in the inducement and negligent misrepresentation claims stemming from Defendant's representations of its expertise and ability to perform its duties under a contract). The Third Circuit characterized this as a "straightforward application of the gist of the action doctrine" because the agreement established the duty to pay for the goods in the first place. *Id.*

---

[3] Plaintiff cites three cases which permit claims of fraud where a party misrepresents or conceals its inability to pay. However, those cases apply New Jersey law or do not discuss the gist of the action doctrine so they are of no help here. *See SSC Manager, LLC v. Venezia FC 1907 LP*, 2017 WL 3225851 (E.D. Pa. 2017) (applying New Jersey law); *Phoenix Techs., Inc. v. TRW, Inc.*, 834 F. Supp. 148, 151 (E.D. Pa 1993) (same); *see also Clientron Corp. v. Bennett*, 2014 WL 2693583 (E.D. Pa. 2014) (relying on *Phoenix Technologies* and not discussing gist of the action).

B. *The Statute of Frauds does not bar Plaintiff's claim against Roubeni*

Plaintiff's breach of contract claim against Roubeni is premised on the contention that he personally guaranteed the debt of DBDK. Plaintiff and Defendants' version of events in this regard differ. Plaintiff asserts that Roubeni initiated a phone conference with Hollingsworth to assure her that DBDK would pay Global's contract if it would release the goods from the May 2016 purchase order from the factory floor. According to Plaintiff, Roubeni used the phrases "I promise you" and "I will get you" $180,000, creating an impression that Roubeni had personally guaranteed the debt. Roubeni and Koren, who was also on the call, deny these statements. This classic "he said/ she said" problem creates a dispute of fact, but the Court must determine if this fact is material as a matter of law.

    i.    *Pennsylvania law applies*

As a preliminary matter, the parties dispute which law applies to an oral promise to guarantee the debt of another. Both New York and Pennsylvania have adopted the statute of frauds which require a written assumption to guarantee a debt of another. *See* 33 Pa. Stat. Ann § 3 ("No action shall be brought . . . upon any special promise, to answer for the debt of another, unless the agreement . . . shall be in writing. . . ."); N.Y. Gen. Oblig. Law § 5-701(2) (requiring any agreement "to answer for the debt, default or miscarriage of another person" to be in writing). However, unlike New York, Pennsylvania recognizes the "leading object" exception to the Statute of Frauds. This exception "applies whenever a promisor, in order to advance some pecuniary or business purpose of his own, purports to enter into an oral agreement even though that agreement may be in the form of a provision to pay the debt of another." *Biller v. Ziegler*, 593 A.2d 436, 440 (Pa. Super. 1991). Thus, in Pennsylvania, a guarantee of another's debt need not be in writing "where the surety-promisor's main purpose is his own primary or business

advantage," which is ultimately a question of fact. *Id.* *Cf. Capital Knitting Mills, Inc. v. Duofold, Inc.*, 131 A.D.2d 87, 91 (N.Y. App. Div. 1987) (recognizing that New York does not recognize the "leading object" rule though it is "almost universally accepted" elsewhere). The choice of law determination is therefore significant.

A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, which is Pennsylvania. *See Klaxon Co. v. Stentor Electric Mgr. Co.*, 313 U.S. 487, 497 (1941). Pennsylvania courts apply the law of the forum with the "most interest in the problem" using a three-step approach. *Griffith v. United Air Lines Inc.,* 203 A.2d 796, 806 (Pa. 1964); *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (predicting that Pennsylvania would adopt the "interests/contacts" approach to contracts as well as torts). The first step requires a court to determine if there is a "real conflict between the potentially applicable laws." *Id.* at 230. If a real conflict exists, then the court must examine the governmental policies underlying each law. "[I]f *both* jurisdictions' interests would be impaired by the application of the other's laws . . . the Court must determine which state has the 'greater interest in the application of its law.'" *Id.* at 230-31 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970)).

Taking each step in turn reveals that there is a true conflict between Pennsylvania and New York law on this issue. First, Pennsylvania recognizes the leading object rule, *Biller*, 593 A.2d at 440, while New York does not. *See Martin Roofing, Inc. v. Goldstein*, 60 N.Y.2d 262, 269 (1983) (recognizing that the leading object rule "is not recognized in this state."). Thus, the laws of both states conflict on a material issue. Second, an examination of the government interests of both states reveals that the present dispute is a "true conflict." The Statute of Frauds is intended, by both Pennsylvania and New York, to prevent fraudulent claims in the absence of

a written agreement. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 861-62 (3d Cir. 1994) ("The purpose of the statute of frauds . . . [is] to protect people from fraudulent claims that a contract did or did not exist."); *Savoy Record Co. v. Cardinal Export Corp.,* 15 N.Y.2d 1 (1964) (stating that the purpose of the Statute of Frauds is to "safeguard against false claims of agreement."). Pennsylvania has recognized the "leading object rule," in particular, however, because where an oral promise to assume a debt serves an individual's commercial pecuniary interests, the leading object rule allows "less need for cautionary or evidentiary formality in the commercial context." *Biller*, 593 A.2d at 440. By contrast, New York's highest court has explained that the purpose of not recognizing the leading object rule "is evidentiary, to avoid perjury, and incidentally to serve as a cautionary measure to avoid ill-considered actions." *Martin Roofing*, 60 N.Y.2d at 268. Thus, the interests of the states are in direct conflict. Pennsylvania has taken a position that the leading object rule safeguards against potential fraud and New York has taken a position that the leading object rule encourages fraud.

Where a "true conflict" exists, the court must examine which state has a "greater interest in the application of its laws" by "weigh[ing] the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Hammersmith*, 480 F.3d at 231 (internal quotations omitted). Pennsylvania has adopted the Restatement (Second) of Conflict of laws, which sets forth the contacts to weigh in a "true conflict" between the laws of multiple jurisdictions. *See Toll v. Tannenbaum,* 596 Fed. App'x 108, 112 (3d Cir. 2014). The factors to consider are (a) "the place of contracting;" (b) "the place of negotiation of the contract;" (c) "the place of performance;" (d) "the location of the subject matter of the contract," and (e) "the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2) (1971). In this case, the place of

contracting is the place where "the last act necessary, under the forum's rules of offer and acceptance created a binding and enforceable agreement." Restatement (Second) of Conflict of Laws § 188 cmt. e. Under Pennsylvania law, "[w]here a contract is accepted by telephone, the acceptance is effective and the contract is created at the place where the acceptor speaks." *Interstate Carriers Coop. v. Workmen's Comp. App. Bd.*, 443 A.2d 1376, 1377 n.3 (Pa. Commw. 1982). Therefore, the place of contracting is Pennsylvania because Hollingsworth purportedly accepted Roubeni's offer while in Pennsylvania. The place of negotiation of the contract involved both Pennsylvania and New York. "This contact is of less importance when there is no single place of negotiation and agreement." Restatement (Second) of Conflict of Laws § 188 cmt. e. The place of performance is Pennsylvania because title of the goods would pass from Global to DBDK in Pennsylvania. The location of the subject matter of the contract was also Pennsylvania because the goods were located there. Finally, the place of incorporation and place of business of the parties are Florida (Global's place of incorporation), New York (DBDK's place of incorporation), and Pennsylvania (Global's place of business and the location of one of DBDK's offices). Considering all of the factors together, and weighing their relative importance, demonstrates that Pennsylvania law should apply in this situation.

      *ii.*      *Whether the "leading object" rule applies is an issue of fact for trial*

The "leading object" rule applies where the purpose of a promise to guarantee another's debt is "his own primary or business advantage." *Webb Mfg. Co. v. Sinoff*, 674 A.2d 723, 725 (Pa. Super. 1996). Plaintiff argues that Roubeni benefitted by personally guaranteeing the loan because Roubeni was attempting to secure delivery of the goods from the May 2016 purchase order for his own company. According to Plaintiff, Roubeni stood to gain personally if Global delivered the May 2016 purchase order. Whether a party's leading object is their own personal

9

gain is ultimately a question of fact and one which, on the record here, cannot be decided on a motion for summary judgment. The facts to be considered at trial include Roubeni's ownership percentage in DBDK (40% at the time of his alleged guarantee) and how closely held DBDK is (Roubeni was one of only four shareholders at the time of his alleged guarantee). *Id.* at 726; *see also Grant v. Wright, Inc. v. Haworth Energy Res., Inc.,* 486 A.2d 507-509 (Pa. Super. 1984) (finding 52% ownership sufficient to show a personal guarantee of a corporation's debt advance the promisor's business interests; holding that the leading object exception applies to closely held corporation with three members); *Acme Equipment Co. Inc. v. Allegheny Steel Corp.*, 217 A.2d 791 (Pa. Super. 1966) (finding 25% ownership insufficient for same).[4]

The only remaining question is what Roubeni actually said on the November 6 call with Hollingsworth. Hollingsworth testified at her deposition that Roubeni told her "I'm the money guy and I promise you I will get you the $100,000 by the end of the month." Defendants argue that this is insufficient to demonstrate a personal guarantee – but point to no case law to support that Roubeni's alleged statement is insufficient to create a personal guarantee as a matter of law. Thus, there is a dispute of fact over whether Roubeni agreed to personally guarantee payment and the matter must be resolved at trial. *See Thomas A. Armbruster, Inc. v. Barron*, 491 A.2d 882, 887 (Pa. Super. 1985) (quoting 1A. Corbin, *Corbin on Contracts* § 29 (1963) ("[w]here the facts are in dispute, the question of whether a contract was formed is for the jury to decide. . . . People do business in a very informal fashion. . . . It is a mere matter of interpretation of their expressions to each other, [which is] a question of fact." ). Accordingly, Plaintiff's contract claim against Roubeni will not be dismissed at this time.

---

[4] Defendants' argument that the facts of the case do not support an exception under the leading object rule fails because Defendants only cite New York law, which has not adopted the leading object rule.

*C. Quantum Meruit and Unjust Enrichment*

Plaintiff represents in its briefing – as it should given the applicable law – that it "does not intend to pursue at trial its claims for unjust enrichment and quantum meruit." Both Pennsylvania and New York preclude recovery in quantum meruit and unjust enrichment if the parties have a valid enforceable contract that governs the same subject matter as the quantum meruit and unjust enrichment claims. *See Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006) ("By its nature, the doctrine of quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists"); *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382 (1987). As discussed supra, the purchase orders are valid and enforceable contracts, 13 Pa. Stat. and Cons. Stat. Ann. § 2204, and, thus, Plaintiff's claims for unjust enrichment and quantum meruit are untenable.

A separate order follows.

| | |
|---|---|
| **February 5, 2018** | **BY THE COURT:** |
| | **/s/Wendy Beetlestone, J.** |
| | |
| | **WENDY BEETLESTONE, J.** |